THIRD DIVISION
NOVEMBER 21, 2007

No. 1-06-3723

| | | |
|---|---|---|
| ESTATE OF BASELEKY BANTSOLAS, Deceased, | ) | Appeal from the |
| | ) | Circuit Court of |
| Petitioner-Appellant, | ) | Cook County |
| | ) | |
| v. | ) | |
| | ) | |
| NICHOLAS BANTSOLAS and TIMOTHY | ) | |
| TIMMONS, Individually and as Trustees of | ) | No. 97 P 7886 |
| Bantim Property Declaration of Trust, | ) | |
| | ) | |
| Respondents-Appellees | ) | |
| | ) | |
| (Chicago Title Land Trust Company, as Trustee | ) | |
| of Trust Nos. 34380 and 27044, | ) | The Honorable |
| | ) | Jeffrey A. Malak, |
| Respondent). | ) | Judge Presiding. |

JUSTICE GREIMAN delivered the opinion of the court:

This case appears before us following the trial court's dismissal of a citation to recover assets proceeding pursuant to section 16-1 of the Probate Act of 1975 (Act) (755 ILCS 5/16-1 (West 1998)) in favor of respondents, Nicholas Bantsolas and Timothy Timmons, and against the Estate of Baseleky Bantsolas, deceased (the estate). The administrator of the estate filed the underlying citation petition against Bantsolas and Timmons to retrieve property held in a land trust, the beneficial interest of which had been transferred to them pursuant to amendment. On appeal, petitioner contends that the proposed amendment was invalid because it was not accepted prior to Baseleky Bantolas's (Baseleky) death, and the trial court erred in determining that it was the estate's burden to prove such. Based on the following, we affirm.

The property at issue, 3939-59 West 95th Street, Evergreen Park, Illinois, was initially

placed into two land trusts, Chicago Trust Company (Chicago Trust) Nos. 34380 and 27044,[1] in 1950 and 1960, respectively, by Baseleky and her husband as joint owners of the beneficial interests therein.[2] Baseleky's husband predeceased her; therefore, she became owner of the entire beneficial interest of both trusts. On November 30, 1996, Baseleky executed an amendment to each trust, such that an equal beneficial interest was to be created for both Bantsolas and Timmons, contingent upon her death. On December 4, 1996, Baseleky's attorney mailed the amendments to Chicago Title Insurance Company, which was neither an original trustee nor a successor trustee. Notwithstanding, the amendments eventually arrived at Chicago Trust and were cosigned on December 13, 1996 by Assistant Vice President Carrie Barth and Assistant Secretary Martha Lopez. Baseleky, however, died on December 12, 1996.

Bantsolas and Timmons became aware of the amendments after Baseleky's death. In accordance with the trustee's policy, on January 6, 1997, they sent Chicago Trust a signed document entitled "Acceptance of Transfer of Beneficial Interest and Ratification of Trust Agreement," and representatives of Chicago Trust acknowledged receipt of the document within days. Thereafter, Bantsolas and Timmons directed Chicago Trust to transfer title to the real property held by the two trusts to Citizens Bank–Illinois (Citizens Bank) and later directed Citizens Bank to issue title to them as cotrustees of the newly created Bantim Property

---

[1]The original trustee was City National Bank and Trust Company of Chicago, but was then succeeded by Chicago Title and Trust Company and again by Chicago Trust, the trustee at the time in interest.

[2]According to the record, the trusts were extended every 20 years until the time at issue.

1-06-3723

Declaration of Trust.

In 1998, Eugenia Lialios, administer of the estate, filed a petition to issue a citation to discover assets directed at, *inter alia*, Bantsolas, Timmons, Chicago Trust and Citizens Bank, in order to ascertain "the ownership and/or status" of the property at issue based upon the belief that the beneficial interests of the land trusts were "wrongfully and/or illegally transferred after the death of the decedent." On August 27, 1998, the court granted the petition. The record reveals that citations were issued; however, it is unclear from the record, and the parties failed to disclose, what occurred thereafter.[3]

Over five years later, on September 16, 2003, the administrator filed a petition to issue a citation to recover assets against Bantsolas and Timmons, arguing that Bantsolas and Timmons "improperly created the amendment to the land trust" and that the amendment was void "because it was lodged after the death of the decedent." The trial court granted leave to issue the citations, and Bantsolas and Timmons filed a response and affirmative defenses. Bantsolas and Timmons additionally filed a motion for summary judgment, which the trial court denied. Thereafter, on June 14, 2005, the administrator filed an amended petition to issue a citation to recover assets against Bantsolas, Timmons and Chicago Trust.

On November 21, 2006, a stipulated bench trial was held to determine whether the beneficial interests in the land trusts were properly transferred to Bantsolas and Timmons. During his prior deposition, David Lanciotti, vice president and office counsel for Chicago Trust, testified

---

[3]Our review of the record demonstrates that the administrator was simultaneously contesting heirship.

that he was unable to ascertain exactly when Chicago Trust received the amendments. Lanciotti further testified that Chicago Trust does not "accept an amendment when we know the beneficiary has died if it has been presented after death. Our trust agreement says that no amendment will be effective until we accept it. Postmortem amendments are not acceptable." Carrie Barth and Martha Lopez further testified that neither of them was aware exactly when the amendments arrived to the office. Barth stated, however, that it was possible that the amendments had been received prior to December 13, the day after Baseleky's death and the day the amendments were accepted by Chicago Trust.

The trial court ultimately dismissed the citations to recover assets in favor of Bantsolas and Timmons. Specifically, the trial court determined that the decedent retained the power of direction over her trusts and instructed her attorney to prepare the amendments providing contingent beneficial interests in both land trusts to Banstolas and Timmons prior to her death. The court noted that there was no evidence of lack of capacity or undue influence, especially where respondents were unaware of the amendments until after Baseleky's death. The trial court further noted that Baseleky's attorney addressed the amendments to the wrong company; however, the accurate company was located within the same building as the incorrectly named trustee and the letter indicated that it was sent to the attention of the "land trust division." Finally, the court ruled:

> "The burden is on the [p]etitioner to show by a preponderance of the evidence that
> this [amendment] didn't get there. That it – not only that it didn't get there, but that
> Chicago Title & Trust Company couldn't have been in a position to execute the

1-06-3723

amendments prior to [December 13, 1996]. And I don't believe it has done so."
This timely appeal followed.

In Illinois, a land trust provides a method of structuring property whereby a trustee holds legal and equitable title to the real property and a beneficiary holds the interest to the trust in the form of personal property. Wagemann Oil Co. v. Marathon Oil Co., 306 Ill. App. 3d 562, 567 (1999). The land trust beneficiary has the exclusive right to, *inter alia*, "possess, manage and physically control the real estate" and "direct the trustee in dealing with title to the real estate." In re Estate of Crooks, 266 Ill. App. 3d 715, 721 (1994). In general, land trust agreements can be freely amended. Dorman v. Central National Bank in Chicago, 97 Ill. App. 3d 429, 432 (1981). Unless expressly restricted, "amendments concerning the identity of the beneficiaries, the power of direction, or the allocation of proportionate interests in the trust may be effectuated by simple assignment without further documentation." Dorman, 97 Ill. App. 3d at 432. However, if expressly provided for in the trust instrument, modifications must comply with those requirements as set forth. Parish v. Parish, 29 Ill. 2d 141, 149 (1963).

In construing a trust, a reviewing court must determine the intent of its creator at the time the instrument was executed by relying on the plain and ordinary meaning of the words used. Whittaker v. Stables, 339 Ill. App. 3d 943, 946-47 (2003), citing Williams v. Springfield Marine Bank, 131 Ill. App. 3d 417, 419-20 (1985). Moreover, the estate has the burden of proving that the property at issue belonged to the decedent at the time of his or her death. In re Estate of Hill, 42 Ill. App. 2d 396, 400-01 (1963). Finally, a trial court's determination of whether certain property belongs to an estate will not be overturned on appeal unless it is against the manifest

-5-

weight of the evidence. In re Estate of Joutsen, 100 Ill. App. 3d 376, 381 (1981).

The parties do not dispute the existence of the instrument naming respondents as beneficiaries, the fact that the decedent executed those amendments to the land trust prior to her death or the decedent's intent in executing those amendments. The parties merely dispute whether the amendments were valid.

In the instant case, the trust agreements originally entered into by Baseleky and her husband, and extended thereafter, expressly afforded that "any interest under this trust *** shall be deemed to be personal property, and may be assigned and transferred as such." The first land trust, No. 34380, was silent on the issue of amendment; however, the second trust, No. 27044, provided:

> "The beneficiaries, acting unanimously, may by written instrument delivered to said trustee, amend or modify this trust agreement in any manner, but no such amendment or modification affecting or changing any duty, right, power, liability or responsibility of said trustee shall be effective unless accepted in writing by said trustee."

Consequently, trust No. 34380 could be freely amended and any written amendment to trust No. 27044 would be effective upon delivery to Chicago Trust, assuming it did not alter the "duty, right, power, liability or responsibility" of the trustee.

The evidence presented at trial demonstrated that Baseleky executed the amendments to both trusts on November 30, 1996; Baseleky's attorney mailed the amendments to an incorrectly named trustee at the accurate street address on December 4, 1996; Baseleky died on December 12, 1996; and the amendments were accepted by Barth and Lopez of Chicago Trust on December

13, 1996. Although the parties agree that there was no evidence demonstrating the exact date on which the trustee received the amendments, the burden was on the estate to establish that the amendments were not delivered within the decedent's lifetime. See In re Estate of Hill, 42 Ill. App. 2d at 400-01. There is a legal presumption in favor of delivery (Jackson v. Pillsbury, 380 Ill. 554, 577 (1942)), and the estate has failed to satisfy its burden. *Cf.* In re Estate of Elwell, 1 Ill. App. 3d 455, 459 (1971) (the estate satisfied its *prima facie* burden that the funds at issue belonged to the decedent where a withdrawal slip from an account bearing the decedent's name was presented by the decedent's brother two days after her death).

The facts of the case at bar are similar to those in In re Estate of Wood, 32 Cal. App. 3d 862, 108 Cal. Rptr. 522 (1973), where the California Court of Appeal concluded that the beneficiary effectively exercised her power of appointment despite the fact that her attorney did not deliver the written appointing instrument until after her death. In re Estate of Wood, 32 Cal. App. 3d at 883, 108 Cal Rptr. at 535-36. The court reasoned that, although the trust decree specified that the power of appointment could be exercised only by an instrument delivered to the trustee during the lifetime of the donee, the delivery of the instrument after the donee's death did not render it invalid where there was no question regarding the instrument's authenticity, the donee completed all the necessary steps to have it delivered within her lifetime and the trustee remained protected by not paying anything to the claimants in default of the exercise of the power. In re Estate of Wood, 32 Cal. App. 3d at 883, 108 Cal. Rptr. at 535-36. We find that, for the most part, the California Court of Appeal's reasoning applies equally to the instant case. We, however, distinguish our case based upon the fact that we do not conclude that the instant

amendments were valid absent delivery; rather, as previously stated, we conclude that the estate failed to satisfy its burden of proving that delivery was not satisfied prior to Baseleky's death.

We recognize that, had the amendment to No. 27044 altered the "duty, right, power, liability or responsibility" of the trustee, the burden would have shifted to the respondents to demonstrate that the trustee accepted the amendment in writing within decedent's lifetime; however, the instant amendment simply modified the named beneficiaries. Applying the plain meaning of the terms, the amendment, therefore, did not alter the "duty, right, power, liability or responsibility" of the trustee. See Whittaker, 339 Ill. App. 3d at 946-47. Consequently, we do not find that the trial court's ruling was against the manifest weight of the evidence.

We need not address the remaining contentions presented in petitioner's and respondent's briefs or at oral argument because they are unnecessary for the disposition of the instant appeal. See Board of Education of Park Heights School District No. 163 v. State Teacher Certification Board, 363 Ill. App. 3d 433, 441 (2006).

Accordingly, we affirm the judgment of the circuit court of Cook County.

Affirmed.

QUINN, P.J., and THEIS, J., concur.