ESTATE OF Helen E. BOWGREN,
Deceased, Warren D. Bowgren,
Executor, Petitioner–Appellee,

v.

COMMISSIONER OF INTERNAL
REVENUE, Respondent–
Appellant.

No. 96–1366.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 17, 1996.

Decided Jan. 24, 1997.

Thomas F. Joyce, Robert L. Wiesenthal (argued), Bell, Boyd & Lloyd, Chicago, IL, for Petitioner–Appellee.

Stuart L. Brown, Curtis G. Wilson, Internal Revenue Service, Gary R. Allen, Jonathan S. Cohen, Curtis C. Pett (argued), Department of Justice, Tax Division, Appellate Section, Loretta C. Argrett, Department of Justice, Tax Division, Washington, DC, for Respondent–Appellant.

Before EASTERBROOK, RIPPLE and ROVNER, Circuit Judges.

RIPPLE, Circuit Judge.

Helen E. Bowgren, deceased, created an Illinois land trust in 1975 and divided the trust's beneficial interest into ninety-eight units. Between 1975 and 1979, she transferred some of those units to her three children. She died testate on April 8, 1990. Mrs. Bowgren's estate disclosed the transfer of those units but excluded their value from the gross estate. The Commissioner of Internal Revenue ("CIR") issued a notice of deficiency to the estate, and the estate petitioned the Tax Court for a redetermination of the deficiency. The Tax Court granted the estate the relief it requested. For the reasons that follow, we reverse the judgment of the Tax Court and remand the case for further proceedings consistent with this opinion.

I

BACKGROUND

A. *Facts*

In 1975, Mrs. Bowgren inherited property in Kane County, Illinois. On December 30, 1975, she entered into an agreement with the State Bank of St. Charles to create an Illinois land trust and deeded the real estate to the bank as trustee. The trust agreement provided:

[T]he interest of any beneficiary hereunder shall consist solely of a power of direction to deal with the title to said real estate and to manage and control said real estate as hereinafter provided, and the right to receive the proceeds from rentals and from mortgages, sales or other disposition of said real estate, and that such right in the avails of said real estate shall be deemed to be personal property, and may be assigned and transferred as such;

... and that no beneficiary hereunder at any time shall have any right, title or interest in or to any portion of said real estate....

....

While the State Bank of St. Charles is the sole owner of record of the real estate ..., it is understood and agreed by the parties ... that said Bank of St. Charles will ... convey title to said real estate, execute and deliver deeds for or otherwise deal with said real estate only when authorized to do so in writing and that it will (notwithstanding any change in the beneficiary or beneficiaries hereunder, unless otherwise directed by the beneficiaries) on the written direction of

Helen E. Bowgren

or on the written direction of such person or persons as may be beneficiary or beneficiaries at the time, make deeds for, or otherwise deal with said real estate....

Trust Agreement, Joint Ex. 1–A at 1–2. The trust agreement also divided the beneficial interest in the trust into ninety-eight units.

Between December 30, 1975 and January 4, 1979, Mrs. Bowgren assigned twenty-seven units of the beneficial interest to her three children—nine units each.[1] On its federal estate tax return, her estate disclosed the transfer of these units to her children and attached copies of the Quarterly Gift Tax Returns to the federal estate tax return. The estate did not, however, include the value of these gifts in Mrs. Bowgren's gross estate. By notice dated July 28, 1993, the CIR informed the estate of a $152,080 tax deficiency. According to the Internal Revenue Service ("IRS"), under §§ 2036 and 2038 of the Internal Revenue Code ("I.R.C."),[2] the value of the transfers should have been in-

---

1. Mrs. Bowgren's assignment of the first 18 units of beneficial interest provided: "FOR VALUE RECEIVED I hereby sell, assign, transfer and set over unto [Name of Assignee], [Number of Units] of, all my/our rights, powers, privileges, and beneficial interest in and to [the] trust agreement...." Joint Exs. 2–B to 7–G. The assignments of the remaining nine units did not include the over-stricken words at all. See Joint Exs. 8–H to 16–P. Both parties agree that, notwithstanding the recitation of consideration provided

in the assignments, no consideration for these units was ever paid.

2. Section 2036(a)(2) of the I.R.C. provides:

The value of the gross estate shall include the value of all property to the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, under which he has retained for

cluded in Mrs. Bowgren's gross estate. The estate filed a petition with the United States Tax Court seeking a redetermination of the deficiency.

### B. Tax Court Proceedings

The Tax Court recognized that whether the value of the twenty-seven units of beneficial interest should have been included in Mrs. Bowgren's gross estate turns on the relationship between any power of direction retained by Mrs. Bowgren and the beneficial interests assigned to her children. In the Tax Court, the CIR insisted that the decedent's power of direction continued in full force, notwithstanding the assignments. Because she retained the power to modify or to defeat the transferred beneficial interests at any time, the value of the assignments, the CIR maintained, should have been included in the gross estate. Mrs. Bowgren's estate, on the other hand, contended that, when Mrs. Bowgren transferred the entire beneficial interest without specifically reserving the power to direct the trustee with respect to these twenty-seven units, she retained no individual power to modify her children's enjoyment of their units. Consequently, the estate submitted, it properly excluded the value of the transferred units from the gross estate, and there is no tax deficiency.

The Tax Court disagreed with both parties' positions. The court determined that, under Illinois law, the land trust agreement, when executed, vested two separate powers of direction in Mrs. Bowgren, one exercisable in conjunction with all the beneficiaries and one exercisable by herself alone. The Tax Court held that the power of direction retained by Mrs. Bowgren alone did not include the right to terminate or to modify the beneficial interests held by her three children because this power was analogous to a power to direct the activities of the trustee with respect to the investment of the trust property. The Tax Court also determined that any exclusive power Mrs. Bowgren retained to direct the trustee to dispose of the trust property was limited by a fiduciary duty she owed to the beneficiaries. With regard to the joint power of direction Mrs. Bowgren retained (the power of direction exercisable concurrently with the other beneficiaries), the Tax Court held that such a power did not make the value of the units taxable under § 2036(a)(2). From the resulting decision disallowing the deficiency, the CIR took this appeal.

## II

## DISCUSSION

### A. Taxation of Estates

Under § 2001 of the I.R.C., the taxable estate, which § 2051 defines as the value of the gross estate less applicable deductions, of every decedent who is a citizen or resident of the United States is subject to a federal estate tax. The value of the gross estate includes the value of all the decedent's property—real or personal, tangible or intangible, wherever situated—at the time of death. I.R.C. §§ 2031, 2033. Sections 2036 and 2038 further delineate the type of property interest properly included in a decedent's gross estate. Under these provisions, the gross estate includes the value of transferred property if the decedent retains any power

his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death—
    . . . .
    (2) the right, either alone or in conjunction with any person, to designate the person who shall possess or enjoy the property or the income therefrom.
26 U.S.C. § 2036(a)(2). Section 2038(a)(1) provides that the gross estate shall include the value of all property, including:
    **(1) Transfers after June 22, 1936.**—To the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power (in whatever capacity exercisable) by the decedent alone or by the decedent in conjunction with any other person (without regard to when or from what source the decedent acquired such power), to alter, amend, revoke, or terminate or where any such power is relinquished during the three-year period ending on the date of decedent's death.
26 U.S.C. § 2038(a)(1).

or control over the transferred property.[3] Section 2036(a) requires that the value of property transferred in trust be included in the settlor's gross estate if, at the time of his death, the settlor retains a discretionary right, either alone or in conjunction with another, to designate the person who will possess or enjoy the property. *Estate of Sulovich v. Commissioner*, 587 F.2d 845, 847–48 (6th Cir.1978). Section 2038(a)(1) requires inclusion of the value of the property transferred in trust in the settlor's gross estate if, at the time of his death, the settlor retains the discretionary power to terminate the trust. *Id.* at 848. The settlor's power to terminate the beneficiaries' rights to enjoyment of the trust is a power to "alter, amend, revoke or terminate" for purposes of I.R.C. § 2038(a)(1).[4]

### B. *Illinois Land Trusts*

■ The Illinois land trust[5] has been described variously as "an imaginative creation of nineteenth and twentieth century Illinois practitioners, abetted by the Illinois courts," *Old Orchard Bank & Trust Co. v. Rodriguez*, 654 F.Supp. 108, 110 (N.D.Ill.1987), as a "fiction[ ]," Anthony Haswell & Barbara B. Levine, *The Illinois Land Trust: A Fictional Best Seller*, 33 DePaul L.Rev. 277, 277 (1984), and as a "unique creation." *People v. Chicago Title & Trust Co.*, 75 Ill.2d 479, 27 Ill.Dec. 476, 479, 389 N.E.2d 540, 543 (1979).[6] One Illinois court has described land trusts in this manner:

The land trust is a device by which the real estate is conveyed to a trustee under an arrangement reserving to the beneficiaries the full management and control of the property. The trustee executes deeds, mortgages or otherwise deals with the property at the written direction of the beneficiaries. The beneficiaries collect rents, improve and operate the property and exercise all the rights of ownership other than holding or dealing with the legal title. Th[is] arrangement is created by two instruments. The deed in trust conveys the realty to the trustee. Contemporaneously with the deed in trust a trust agreement is executed.

*Robinson v. Chicago Nat'l Bank*, 32 Ill. App.2d 55, 176 N.E.2d 659, 661 (1961).

■ Thus, land trusts are characterized by four distinctive features. First, both the legal and equitable title to the res are vested in the trustee, not the beneficiary.[7] Land trusts vest the usual attributes of ownership—the rights of possession and management of the property, as well as the rights to rents and proceeds from the property—in the beneficiary or beneficiaries.[8] Second, this beneficial interest, the bundle of beneficiaries' rights and privileges, is not characterized as a real estate interest, but as a personal property interest.[9] Third, the trustee has no duties or powers other than to execute deeds and mortgages or otherwise to deal with the property as directed by the holder of the power of direction. *Robinson*, 176 N.E.2d at 661. Fourth, in land trusts,

3. *See* I.R.C. § 2036(a)(2); I.R.C. § 2038(a)(1).

4. *See Lober v. United States*, 346 U.S. 335, 74 S.Ct. 98, 98 L.Ed. 15 (1953); *Commissioner v. Estate of Holmes*, 326 U.S. 480, 66 S.Ct. 257, 90 L.Ed. 228 (1946).

5. For a discussion of Illinois land trusts, see generally Henry W. Kenoe, Kenoe on Land Trusts (IICLE 1989) [hereinafter Kenoe on Land Trusts] (discussing history, nature, attributes and process for creating land trusts in Illinois).

6. Although the Illinois land trust is a "unique" trust, it is still governed by the Illinois law of trusts. *Home Fed. Sav. & Loan Ass'n v. Zarkin*, 89 Ill.2d 232, 59 Ill.Dec. 897, 901, 432 N.E.2d 841, 845 (1982).

7. *Chicago Title & Trust Co.*, 27 Ill.Dec. at 479, 389 N.E.2d at 543 ("[L]egal and equitable title

lies with the trustee and the beneficiary retains what is referred to as a personal property interest."); *In re Estate of McGaughey*, 60 Ill.App.3d 150, 17 Ill.Dec. 260, 263, 376 N.E.2d 259, 262 (1978) (citing *Levine v. Pascal*, 94 Ill.App.2d 43, 236 N.E.2d 425, 428 (1968)).

8. *See Old Orchard Bank & Trust Co.*, 654 F.Supp. at 110 ("[T]he beneficiary's interest is a special kind of personal property: the rights to the earnings, avails and proceeds of the real estate."); *Chicago Title & Trust Co.*, 27 Ill.Dec. at 479, 389 N.E.2d at 543.

9. *Chicago Title & Trust Co.*, 27 Ill.Dec. at 479, 389 N.E.2d at 543 (citing *Chicago Fed. Sav. & Loan Ass'n v. Cacciatore*, 25 Ill.2d 535, 185 N.E.2d 670, 674 (1962)).

the power of direction, which is a property interest separable from the beneficial interest, provides the possessor with the ability to direct the trustee in the manner in which he is to deal with the property.[10]

▮ This form of holding provides a number of potential benefits for settlors and beneficiaries. First and foremost, it allows for greater secrecy in real estate ownership. The identities of the beneficiaries, who control and receive benefit from the property, need not be a matter of public record. The public records reflect the trustee as the title-holder of the property, but usually do not contain the trust agreement. Kenoe on Land Trusts § 1.6. Land trusts can also limit a beneficiary's personal liability exposure for judgments and liens and allow a beneficiary to assign his beneficial interest in the property without instruments of conveyance or expensive title searches. *Id.* § 1.11. Finally, because the beneficial interest in the land trust is personal, rather than real, property, the trust is often used in estate planning and testamentary dispositions. "It affords a procedure for treating such an estate asset more expeditiously and less expensively." *Id.* § 7.44.

## C. *Examination of the Trust*

### i.

▮ The Tax Court determined that Mrs. Bowgren, the settlor, did retain a personal power to direct the trustee (one that could be exercised by her alone), but that Illinois courts would not find the power to be one that could defeat the beneficiaries' interests. The Tax Court further concluded that Mrs. Bowgren's exercise of the power was subject to a fiduciary duty. In reaching these conclusions, the Tax Court properly recognized that Illinois law controls the dispositive issues of whether Mrs. Bowgren retained a personal power of direction and, if so, the scope of that power. *See Helvering v. Stuart,* 317 U.S. 154, 162, 63 S.Ct. 140, 144–45, 87 L.Ed. 154 (1942); *Estate of Lidbury v.*

*Commissioner,* 800 F.2d 649, 652 n. 3 (7th Cir.1986) ("Where federal tax liability turns upon the character of a property interest, federal courts are constrained to follow state law determinations of the interest in or right to such property."). When looking to Illinois law to determine the contours of the power at issue here, we are mindful that our task is to interpret the documents in the same manner the Illinois Supreme Court would if it were faced with this question. *See Estate of Kraus v. Commissioner,* 875 F.2d 597, 600 (7th Cir.1989) (noting that "only the state's highest court can make a ruling on state law that binds federal courts"). Nevertheless, federal courts are to give "proper regard" to other Illinois courts' rulings on state law determinations. *See id.* at 601; *cf. Clarin Corp. v. Massachusetts Gen. Life Ins. Co.,* 44 F.3d 471, 474 (7th Cir.1994) (noting in a diversity case that "[w]here the state supreme court has not ruled on an issue, decisions of intermediate state courts control unless there are persuasive indications that the highest state court would decide the issue differently").

### 2.

▮ We now turn to the circumstances of the case before us. To determine the existence and scope of the power of direction retained by Mrs. Bowgren, we must look to the trust agreement itself and to the transfers she made. *See In re Estate of Bork,* 145 Ill.App.3d 920, 99 Ill.Dec. 754, 758, 496 N.E.2d 329, 333 (1986) ("The relationship between the trustee, the beneficiaries, and the holder of the power of direction is determined by the documents comprising the trust agreement, including any amendments to the trust agreement effectuated by assignment or otherwise.").

▮ We first examine the original trust agreement. That document provided that "the interest of any beneficiary hereunder shall consist solely of a power of direction" to

10. *See Kavanaugh v. Estate of Dobrowolski,* 86 Ill.App.3d 33, 41 Ill.Dec. 358, 407 N.E.2d 856 (1980); *cf.* IIA Austin W. Scott & William F. Fratcher, The Law of Trusts § 185 (4th ed. 1987) (noting that holder of such a power can "compel certain action by the trustee"); Restatement

(Second) of Trusts § 185 (1959) ("If under the terms of the trust, a person has power to control the action of the trustee in certain respects, the trustee is under a duty to act in accordance with the exercise of such power ....") (boldface omitted).

deal with and to manage the property and of the right to receive proceeds and avails from the real estate. Joint Ex. 1–A at 1. It further provided that the trustee would convey title, would execute and deliver deeds for or would otherwise deal with the property only on the written authorization of Mrs. Bowgren, "notwithstanding any change in the beneficiary or beneficiaries," or on the written direction of the beneficiary or beneficiaries at the time. *Id.* at 2. We believe that an Illinois court would interpret this language of the trust agreement as granting Mrs. Bowgren two distinct powers of direction: the power of direction as the individual specifically named in the trust agreement and the power of direction as the sole beneficial interest holder.

In *In re Estate of Bork*, 99 Ill.Dec. at 758, 496 N.E.2d at 333, the Appellate Court of Illinois determined that a virtually identical trust agreement permitted the power of direction to be exercised by deceased (Mr. Bork) solely or by the beneficiaries at the time. The court further concluded, "It is clear that, until his death, deceased had the power to direct the trustee to convey title without the concurrence of any other holder of part of the beneficial interest." *Id.* Similarly, unless the assignment documents divested Mrs. Bowgren of her personal power of direction, Illinois courts would find that she too, until her death, had the power to direct the trustee to convey title without the concurrence of any other beneficiary.

■ We therefore must turn to the documents by which Mrs. Bowgren assigned the units of beneficial interest to determine whether, upon execution of these instruments, she divested herself of her personal power to direct the trustee. The guiding principles are well established. "The creation and existence of an assignment [are] to be determined according to the intention of the parties...." *Williams v. Independence*

*Bank*, 201 Ill.App.3d 685, 147 Ill.Dec. 201, 204, 559 N.E.2d 201, 204 (1990). The power of direction is a separable property interest that can be transferred or retained apart from the property interest represented by the rest of the beneficial interest [11] and can be reserved without explicit language.[12] In interpreting these documents, "the court is limited to establishing not what the settlor 'meant to say, but rather what was meant by what he did say.'" *Kavanaugh v. Estate of Dobrowolski*, 86 Ill.App.3d 33, 41 Ill.Dec. 358, 365, 407 N.E.2d 856, 863 (1980) (quoting *In re Bentley's Estate*, 14 Ill.App.3d 630, 303 N.E.2d 166, 168 (1973)).

■ Under these principles, it is clear that, had Mrs. Bowgren wanted to deprive herself of this power of direction, she could have done so in these assignments. We must therefore examine the language of these assignments to determine her intent. Mrs. Bowgren's assignments transferring the units of beneficial interest to her children provided that she transferred the units of "beneficial interest in and to [the] ... trust agreement ... including all interest in the property subject to said trust agreement." Joint Exs. 2–B to 16–P. We do not believe that this language can be read as effectuating a transfer of assignment of Mrs. Bowgren's personal power of direction explicitly retained by the original trust agreement.[13] This conclusion is strengthened when the two documents—the original trust agreement and the later assignments—are considered together. The original trust agreement, it will be recalled, provides that the trustee will deal with the real estate "only when authorized to do so in writing and that it will (notwithstanding any change in the beneficiary or beneficiaries hereunder[) ] ... on the written direction of Helen E. Bowgren *or* on the written direction of such persons as may be beneficiary or beneficiaries at the time, make deeds for or otherwise deal with said

---

11. *In re Estate of Bork*, 99 Ill.Dec. 754, 496 N.E.2d at 334; *Dorman v. Central Nat'l Bank*, 97 Ill.App.3d 429, 52 Ill.Dec. 810, 813, 422 N.E.2d 1019, 1022 (1981).

12. Kenoe on Land Trusts § 2.33, at 2–43 (noting that reservation of this power can be inferred from circumstances and the provisions of the

instrument) (citing *Rudolph v. Gersten*, 100 Ill. App.2d 253, 241 N.E.2d 600 (1968)).

13. We agree with the Tax Court and place no significance on the existence of the stricken language of the assignment documents for the first 18 units.

real estate." Joint Ex. 1–A at 2 (emphasis added). This instrument contemplates that Helen Bowgren would convey beneficial interests in trust units while retaining for herself an independent power of direction. Therefore, the plain language of the agreement and of the assignments, especially when read together, leads us to agree with the Tax Court that the Illinois Supreme Court would likely conclude that Mrs. Bowgren retained her personal power to direct the trustee.[14]

■ However, we respectfully disagree with the Tax Court's conclusion with regard to the extent and scope of this power. Having concluded that Mrs. Bowgren retained the power to direct the trustee, without the concurrence of the other beneficiaries, we can find no basis for concluding that, although she retained the power to amend or alter the trust arrangement, she nevertheless did not have the power to defeat completely the beneficial interests of the other beneficiaries.[15] Specifically, we do not believe that the original trust agreement's qualifying language, "unless otherwise directed in writing by the beneficiaries," can be read to mean that Mrs. Bowgren's right of direction must be construed as inherently subordinated to the rights of the holders of a beneficial interest. As the Commissioner points out, an Illinois court was confronted with identical language in *Bork* and yet determined that the decedent had retained an exercisable power of direction. *See* 99 Ill.Dec. at 758, 496 N.E.2d at 333. Therefore, under the terms of the documents, Mrs. Bowgren could have exercised this power, for example, to direct the trustee to convey the title into another land trust, naming herself or anyone else the sole beneficiary.[16] *See, e.g., Rudolph,* 100 Ill.App.2d 253, 241 N.E.2d 600. Such an act would undermine completely the other beneficiaries' enjoyment of their beneficial interests.

■ We also must respectfully decline to accept the Tax Court's conclusion that the Illinois Supreme Court likely would find that Mrs. Bowgren only could exercise her retained power of direction subject to a fiduciary duty owed to the other beneficiaries. Under Illinois law, the settlor does not owe a fiduciary duty to the recipient of a gratuitous assignment of a beneficial interest in a land trust.[17] In the present case, the assignment was gratuitous,[18] and Mrs. Bowgren, the set-

---

**14.** We note the similarity of this result to the one reached in *In re Estate of Bork.* There, notwithstanding the settlor's gratuitous assignment of a portion of the beneficial interest to his children and grandchildren, the Illinois court held that, until his death, Mr. Bork "had the power to direct the trustee to convey title without the concurrence of any other holder of part of the beneficial interest." 99 Ill.Dec. at 759, 496 N.E.2d at 334.

**15.** *See First Fed. Sav. Bank v. Drovers Nat'l Bank,* 237 Ill.App.3d 340, 180 Ill.Dec. 176, 180, 606 N.E.2d 1253, 1257 (1992) ("As long as the [settlors] retained the power of direction, they retained the legal right to mortgage the property (or, more precisely, to direct Drovers to do so), even at the potential cost of defeating the [beneficiaries'] interest in the property."); *Caleca v. Caleca,* 63 Ill.App.3d 414, 20 Ill.Dec. 515, 517, 380 N.E.2d 493, 495 (1978) (noting that when the settlor of a land trust retains power to direct the acts of the trustee, the settlor effectively retains the power to defeat the beneficiary's interest); *cf. Rudolph,* 241 N.E.2d at 605 ("By retaining the exclusive power to direct all acts of the trustee ..., the [settlors] retained the power to defeat [the beneficiary's] interest in the trust ..., and they never parted with the 'exclusive dominion and control' of the trust or the trust res.").

**16.** Because she retained the power granted to her as Helen Bowgren, rather than as a beneficiary, the trustee would need to comply with her written instructions. *See* Restatement (Second) of Trusts § 185 ("If under the terms of the trust a person has power to control the action of the trustee in certain respects, the trustee is under a duty to act in accordance with the exercise of such power ....") (boldface omitted).

**17.** *Caleca,* 20 Ill.Dec. at 518, 380 N.E.2d at 496 (concluding that holders of power of direction owed plaintiff no fiduciary duty because plaintiff had paid no consideration for the assignment); *see also Dorman,* 52 Ill.Dec. at 813, 422 N.E.2d at 1022 (stating that "where the settlor of the trust reserves the power to direct to himself ... [,] the settlor's right to direct conveyances is superior to the ultimate rights of the beneficiaries" and rejecting contention that settlor is under a fiduciary duty in exercising the right).

**18.** Although the assignments recite that consideration was paid, we are not bound by this recitation under the parol evidence rule because, as the parties agree, Mrs. Bowgren's children never paid any consideration for the units of beneficial interests. *See Land of Lincoln Sav. & Loan v. Michigan Ave. Nat'l Bank,* 103 Ill.App.3d 1095, 59 Ill.Dec. 794, 799, 432 N.E.2d 378, 383 (1982)

tlor, continued to be a substantial beneficiary of the trust agreement. Therefore, we must conclude that Illinois courts, if faced with this issue, would conclude that Mrs. Bowgren, until her death, could have exercised her sole power of direction unconstrained by a fiduciary obligation to the other beneficiaries.

### 3.

Having concluded that Mrs. Bowgren retained a power to direct the trustee, exercisable without the concurrence of the other beneficiaries, and that this power could be exercised (subject to no fiduciary duty) to defeat the other beneficiaries' interests, we also must disagree with the Tax Court's conclusion that the Commissioner's determination of a tax deficiency was incorrect. By their plain language, §§ 2036 and 2038 require that the value of any property transferred by a decedent be included in the gross estate if the decedent retains any power of control over the property.[19] Sections 2036(a)(2) and 2038(a)(1) require that the value of these units should have been included in decedent's gross estate. Although Mrs. Bowgren transferred a property interest to her children (the units of beneficial interest), she had the right, at the time of her death, to designate who would possess or enjoy the property because she retained the power to direct the trustee to convey title to a separate trust and to designate whomever she pleased as the beneficiary. Therefore, under § 2036(a)(2)'s provisions, the value of the property should have been included in the gross estate. Similarly, Mrs. Bowgren's power to direct the trustee gave her the ability to alter, amend, revoke or terminate the donee's enjoyment of the property; thus, under § 2038(a)(1), the value of such property was includable in decedent's gross estate.[20]

In sum, although we agree with the Tax Court that Mrs. Bowgren retained a personal power of direction after assigning a portion of the beneficial interest to her children, we cannot agree with the Tax Court's evaluation of the scope of the power under Illinois law. At the time of decedent's death, Mrs. Bowgren retained a power of direction that was not subject to a fiduciary obligation and that could have been used to defeat the other beneficiaries' enjoyment of their units of beneficial interest that she had transferred to them. The CIR was correct, therefore, in issuing the notice of deficiency because the estate failed to include the value of the units in decedent's gross estate.

### Conclusion

For the foregoing reasons, we conclude that the value of the beneficial units should have been included in decedent's gross estate. We therefore reverse the judgment of the Tax Court and remand the case for further proceedings not inconsistent with this opinion.

REVERSED AND REMANDED.

---

(noting that lack of consideration is one of the recognized exceptions to the parol evidence rule).

**19.** *Estate of Sulovich v. Commissioner,* 587 F.2d 845, 849 (6th Cir.1978); *see also Sanford's Estate v. Commissioner,* 308 U.S. 39, 43–44, 60 S.Ct. 51, 55–57, 84 L.Ed. 20 (1939) ("[A] transfer of property upon trust, with power reserved to the donor either to revoke it and recapture the trust property or to modify its terms ... is [an] incomplete [gift].").

**20.** Because we conclude that Mrs. Bowgren retained the power of direction specifically granted to her by name in the trust agreement, we need not reach the issue whether a power to direct the trustee held by the settlor in conjunction with all the beneficiaries would be sufficient to require that the value of the units be included in the gross estate.